372 A.2d 1280

OLIVIA J. MARSHALL AND JOSEPH MARSHALL *vs.* ROSARIO V. TOMASELLI AND CYRIL J. BELLAVANCE.

MAY 6, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

192

BEVILACQUA, C. J.   These civil actions were brought in Superior Court by a husband and wife alleging medical malpractice on the part of the defendant physicians. The cases were tried together before a jury in Superior Court. The defendants, at the conclusion of their case, moved for a directed verdict on all counts. The trial justice granted the motion in part, directing a verdict for the defendant Dr. Tomaselli on both counts, negligence in treatment and failure to obtain the patient's knowing consent;[1] and for the defendant Dr. Bellavance on the issue of negligence in treatment. He submitted one count, alleging failure on the part of Dr. Bellavance to obtain his patient's informed consent, to the jury. The jury returned a verdict in favor of this defendant and judgment was accordingly entered on October 1, 1974. The plaintiffs now appeal from the judgment and base their appeal on the trial justice's granting of the motion for directed verdicts. The plaintiff Olivia J. Marshall sustained the alleged injuries; her husband sued for consequential damages. Since recovery in the husband's case depends on the defendants' liability to the wife, we shall hereinafter treat her as the sole plaintiff.

In 1962 plaintiff consulted Dr. Bellavance regarding her left knee which was painful, swollen and unstable. After several months of treatment, he recommended that plaintiff enter the hospital and have a biopsy performed. In September of that year defendant performed the biopsy, and in addition removed a tumor, which was later found

---

[1]Since plaintiffs have neither briefed nor argued the propriety of the directed verdict in favor of the defendant Dr. Tomaselli on the issue of informed consent, it is considered waived. Sup. Ct. R. 16(a).

to be benign. As a result of the biopsy, Dr. Bellavance diagnosed plaintiff's condition as pigmented villonodular synovitis, a rare tumorous condition which is locally destructive to the structures associated with the knee joint and ultimately capable of destroying the entire joint. The knee condition improved somewhat after the biopsy, but then began to give plaintiff further trouble. On July 3, 1963, on the recommendation of Dr. Bellavance, plaintiff underwent a synovectomy (an extensive operation involving the removal of the soft tissues of the knee to prevent destruction of the joint); in addition, some bone spurs, and the lateral miniscus (part of the cartilage in the knee joint) were removed. Her recovery from this operation was complicated by the onset on July 8 of a severe staphylococcus infection and thrombophlebitis. As a result of the infection, plaintiff was placed in a private room, and on July 26, a hemovac system, consisting of tubes for irrigating and draining the knee joint, was surgically installed.

Doctor Bellavance went on vacation for the month of August and requested defendant Dr. Tomaselli to care for plaintiff. During this time, Dr. Tomaselli removed the drainage tubes from plaintiff's knee, and then placed the knee in a "balanced suspension" apparatus so that it could be exercised. The plaintiff testified that there was no foot rest on the apparatus, and that the toe of her left foot was leaning on the bar of the apparatus with her foot twisted. Later, Dr. Tomaselli installed a foot rest, but plaintiff's foot remained crooked.

In October plaintiff's leg was placed in a cast by Dr. Bellavance and she was discharged from the hospital. He continued to supervise her recovery and in March 1964 the final cast was removed. Subsequently plaintiff complained of a crookedness in her foot and ankle; while she could move her ankle inward, she could not bring it outward.

Doctor Savastano, a witness for defendant Dr. Tomaselli, examined plaintiff in April 1972 and December 1973. He found that plaintiff's knee was fused in thirty degrees of flexion with no motion whatsoever at the knee and that the left foot, due to totally inactive muscles, was inverted with the toes pointing downward and the sole pointing inward. The plaintiff sued defendants on the ground that these injuries were caused by their negligence.

On appeal, plaintiff claims that the trial justice erred in directing a verdict for defendants because plaintiff established a prima facie case of negligence, both directly and by means of the doctrine of res ipsa loquitur. In addition, plaintiff argues that the trial justice incorrectly permitted defendant Dr. Tomaselli to reopen his case to present further testimony after the close of all the evidence.

I

When a motion for a directed verdict is made at the close of all the evidence, the trial justice is under a duty to direct a verdict for the defendant if the evidence is insufficient in law to support a verdict in the plaintiff's favor. *Simeone* v. *Prato,* 82 R.I. 496, 111 A.2d 708 (1955); *Rogers* v. *Sundlun,* 54 R.I. 329, 172 A. 885 (1934); *Cranston Print Works Co.* v. *American Tel. & Tel. Co.,* 43 R.I. 88, 110 A. 419 (1920). In considering such a motion, the trial justice must view the evidence in a light most favorable to plaintiff and give plaintiff the benefits of every reasonable inference following therefrom, without weighing the evidence or passing upon the credibility of witnesses. In reviewing his decision, this court is bound by the same rule. *Wilkinson* v. *Vesey,* 110 R.I. 606, 295 A.2d 676 (1972); *Priestly* v. *First Nat'l Stores, Inc.,* 95 R.I. 212, 186 A.2d 334 (1962); *Antonakos* v. *Providence Institution for Sav.,* 94 R.I. 382, 181 A.2d 101 (1962). After carefully reviewing the record, we conclude that the trial justice did not err.

█ The plaintiff contends that she established directly a prima facie case of negligence. In order to sustain a cause of action for negligence the plaintiff is required to establish a standard of care as well as a deviation from that standard. This court has frequently stated that in medical malpractice cases expert evidence as to whether a physician or surgeon used proper skill and diligence in treatment is necessary except where the lack of care is so obvious as to be within the layman's common knowledge. *Wilkinson* v. *Vesey, supra; Nolan* v. *Kechijian,* 75 R.I. 165, 64 A.2d 866 (1949); *Coleman* v. *McCarthy,* 53 R.I. 266, 165 A. 900 (1933); *Bigney* v. *Fisher,* 26 R.I. 402, 59 A. 72 (1904); *Barker* v. *Lane,* 23 R.I. 224, 49 A. 963 (1901). The physician's duty is not to cure, but to exercise the same degree of diligence and skill as physicians in good standing engaged in the same type of practice, in similar localities, ordinarily have and exercise in like cases. *Wilkinson* v. *Vesey; Bigney* v. *Fisher,* both *supra.* In the case at bar, as plaintiff concedes in her brief, no expert testimony was presented to show either the requisite standard of skill and care owed by defendants to plaintiff or a deviation from that standard.[2]

█ The plaintiff, however, contends that expert testimony was unnecessary because defendants' lack of skill and care was so obvious as to be within the layman's common knowledge. We disagree. The plaintiff was afflicted with pigmented villonodular synovitis, a rare and serious condition which required major surgery in the form of a synovectomy. A review of the testimony of the two defendant physicians demonstrates the complex nature of the diag-

---

[2]Although both the defendant physicians were called as witnesses by the plaintiff under the adverse witness statute, as were the defendant physicians in *Wilkinson* v. *Vesey,* 110 R.I. 606, 295 A.2d 676 (1972), the physicians in the instant case, unlike the physicians in that case, were not questioned about and did not testify as to the requisite standard of care.

nosis and treatment involved in this case. It is apparent that the treatment of plaintiff's condition is neither sufficiently common nor sufficiently nontechnical that a layman could be expected to appraise it. Moreover, a layman could not formulate a reasonable judgment as to the type of treatment that standard professional practice would dictate for plaintiff's condition. Thus, plaintiff's allegation that she was injured as a result of defendants' negligence in treating her is not a subject within the common knowledge of a layman.

Consequently, since this is the type of malpractice case in which proof of the alleged negligence requires expert testimony and since such testimony was absent, plaintiff failed to establish directly a prima facie case of negligence.

## II

The plaintiff alternatively claims that she established a prima facie case of negligence by means of the doctrine of res ipsa loquitur.[3] Where this doctrine is applicable, it provides an indirect means of establishing a prima facie case of negligence. *Wilkinson* v. *Vesey, supra; Cinq-Mars* v. *Kelley,* 95 R.I. 515, 188 A.2d 379 (1963); *Motte* v. *First Nat'l Stores, Inc.,* 76 R.I. 349, 70 A.2d 822 (1950).

Before the doctrine of res ipsa can be utilized in any negligence action three conditions must be met: (1) the

---

[3]The plaintiff also argues that each defendant had the burden of showing that the injury to the plaintiff was not due to his negligence. In so arguing, the plaintiff misconceives the effect of the application of res ipsa loquitur to an action for negligence. As this court has frequently stated, res ipsa establishes inferential evidence of a defendant's negligence, thus making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury. *Motte* v. *First Nat'l Stores, Inc.,* 76 R.I., 349, 70 A.2d 822 (1950); *Reynolds* v. *Narragansett Elec. Lighting Co.,* 26 R.I. 457, 59 A. 393 (1904). Thus, even where res ipsa is applicable, the burden of proof remains on the plaintiff, but the defendant has the burden of going forward with the evidence.

accident or injury must be of a kind which does not occur in the absence of someone's negligence; (2) such accident or injury must be caused by an agency or instrumentality in the exclusive control of the defendant; and (3) it must not have been caused by any voluntary act or contribution on the part of the plaintiff. *Wilkinson* v. *Vesey; Motte* v. *First Nat'l Stores*, both *supra*. The general rule, however, is that res ipsa is not applicable in medical malpractice actions. *Wilkinson* v. *Vesey, supra* at 630, 295 A.2d at 691. Nevertheless, the doctrine may be employed where the above three conditions are satisfied, and the alleged neglect relates to conduct which lies within a layman's common knowledge or there is expert testimony that the injury complained of would not have occurred had the physician exercised due care. *Wilkinson* v. *Vesey, supra* at 630-31, 295 A.2d at 691.

We have already concluded above that plaintiff's allegation that she was injured as a result of defendants' negligence in performing the synovectomy or in treating her after the operation was beyond the ken of the average layman. Furthermore, there was no expert testimony to prove the standard of care or that with conformity to this standard of care the injury would not have occurred.

[14]  As a result the doctrine of res ipsa loquitur was inapplicable in the instant case, and could not be invoked to establish a prima facie case. Thus, we conclude that since plaintiff failed to establish a prima facie case of negligence either directly or by means of res ipsa loquitur, the direction of verdicts in favor of defendants was proper.

### III

The plaintiff further contends that the trial justice erred in allowing the defendant Dr. Tomaselli to reopen his case to present further testimony after the close of all the evidence. The reopening of a case to receive additional evidence is a matter within the sound discretion of the

trial justice and his action thereon will not be interfered with on appeal unless an abuse of discretion is shown. *Levy* v. *Equitable Fire & Marine Ins. Co.*, 88 R.I. 252, 146 A.2d 231 (1958); *Kwasniewski* v. *New York, N.H. & H.R.R.*, 53 R.I. 144, 164 A. 558 (1933). However, since we have concluded that the plaintiff failed to establish her cause of action for medical malpractice, it is unnecessary to pass upon this issue, because even if the trial justice's ruling was in error, the plaintiff could not possibly have been prejudiced thereby.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Charleson & Brill, Marvin A. Brill, Matthew J. Faerber,* for plaintiffs.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendant Rosario V. Tomaselli.

*Hanson, Curran, Bowen & Parks, Kirk Hanson, David P. Whitman,* for defendant Cyril J. Bellavance.